The undersigned have reviewed the prior Interlocutory Opinion and Award filed on June 19, 1995 and the Opinion and Award filed on December 22, 1995 by Deputy Commissioner Morgan S. Chapman. Both Opinions and Awards are incorporated into this Full Commissioner Opinion and Award. Further, the Agreement reached on December 8, 1995 concerning death benefits is also incorporated by reference. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
STIPULATIONS
1. A pre-trial Order dated September 26, 1994.
2. All documents attached to the pre-trial Order.
3. A Form 22 dated March 3, 1995.
4. The deposition of Dr. Fink.
5. A compromise regarding distribution of death benefits entered into on December 8, 1995.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. As of January 27, 1994, decedent had been employed by defendant's Sheriff's Department for over six years as a deputy sheriff. He was five foot eight inches tall, approximately 160 pounds and 46 years old. He was also an Army veteran. His job duties including serving warrants and subpoenas and patrolling an area of the county. His average weekly wage was $392.50. He appeared healthy but did complain of indigestion frequently and took over the counter antacid medication.
2. On the evening of January 27, 1994, one of decedent's assigned tasks was to serve an arrest warrant on Lawrence Junior Miller (Miller). Miller had a reputation for being violent so decedent asked another deputy, Danny Kurfees, to assist him. He also had James Jones, a special deputy, riding with him in his patrol vehicle that night.
3. The three men later met at a restaurant for dinner. Decedent made no complaints of physical problems during that time and appeared to be fine. They left the restaurant at 9:00 p.m. and drove to Miller's residence. Miller let them in and appeared calm initially, but, when told the reason why they were there, he began backing up towards the kitchen. The deputies were concerned that he would get a weapon if he got to the kitchen, so they approached him to restrain him. Miller, who was approximately six feet one inches tall and 250 pounds, began swinging at them. Decedent grabbed one arm and Deputy Jones grabbed the other one, but Miller pulled them both forward. Officer Kurfees then grabbed his head, but Miller managed to drag all three men approximately twenty feet through the house even though the deputies were exerting as much force as they could to stop him.
4. They finally tripped over a kerosene heater and fell to the floor. Miller continued to struggle but he was ultimately brought under control and decedent was able to handcuff him. Once Miller was subdued, the other deputies noticed that decedent had a small cut under one eye which was bleeding and asked him if he was all right. Decedent assured them that he was, but all three men were out of breath from the struggle. They then took Miller to the patrol car and decedent drove to the magistrate's office.
5. Decedent and Deputy Jones went into the magistrate's office while Deputy Kurfees remained in the car with Miller. After filling out some paperwork, decedent walked over to give testimony regarding the new charge that Miller had assaulted a government official. A pin dropped off of his lapel and he began to bend over to pick it up, but he then fell straight backwards without attempting to catch himself. He was unconscious and turning blue, so Deputy Jones began administering cardiopulmonary resuscitation and an ambulance was summoned. Despite the efforts of emergency personnel to revive him, decedent did not respond and he was pronounced dead at 10:42 p.m.
6. Dr. Fink, the Rowan County Medical Examiner, was called to the emergency room to examine decedent regarding the cause of death. He determined that decedent probably died of ischemic heart disease due to arteriosclerotic cardiovascular disease and precipitated by the stress from the arrest.
7. Decedent had pre-existing but undiagnosed coronary vascular disease and the discomfort he attributed to indigestion was probably in part angina. He had not sought medical evaluation or treatment for those symptoms. However, on the evening in question, he did not complain of any physical discomfort or other symptoms and did not appear ill to his fellow officers until he collapsed.
8. Although decedent had previously had to take suspects into custody who resisted arrest, he did not normally have to use the force required to subdue Miller on this occasion. Unusual exertion was required of him and the other two deputies in order to bring Miller under sufficient control so that he could be handcuffed. Although decedent anticipated that Miller would resist arrest, he could not foresee the extent of the struggle which actually ensued. As a result of the stress of the occasion, decedent's pre-existing heart disease was materially aggravated so that he suffered cardiac arrest and died. Consequently, he sustained an injury by accident arising out of and in the course of his employment.
9. Decedent did, in fact, sustain a compensable injury by accident on January 27, 1994 which resulted in his death. On December 8, 1995 the parties agreed upon a compromise regarding distribution of the death benefits arising from the incident in that decedent and his wife were separated at the time he died and there was an issue as to whether Mrs. Beck was living apart from him for justifiable cause. The agreement provides that Mrs. Beck will receive 75% of the benefits and that decedent's mother, Helen Connor, will receive 25% of the benefits after deduction of attorney's fees for Mrs. Beck's counsel. It appears that the agreement should be approved.
10. Pursuant to N.C.G.S. 97-38, the decedent's estate is entitled to burial expenses up to but not to exceed $2,000.00.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
1. On January 27, 1994 decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer which resulted in his death. G.S. § 97-2 (6); Gabriel v. Town of Newton, 227 N.C. 314
(1947).
2. As a result of the death of John Lester Beck, Linda Beck, widow, is entitled to compensation at the rate of $196.25 per week for 400 weeks beginning January 28, 1994. N.C.G.S. § 97-38.
3. As a result of the death of John Lester Beck, Helen Connor, mother, is entitled to compensation at the rate of $65.42 per week for 400 weeks beginning January 28, 1994. N.C.G.S. § 97-38.
4. Plaintiffs are entitled to have defendants provide all medical compensation arising from this injury by accident. N.C.G.S. § 97-2(19); N.C.G.S. § 97-25.
5. Decedent's estate is entitled to receive burial expenses up to but not to exceed $2,000.00 as a result of decedent's injury by accident that resulted in his death. N.C.G.S. § 97-38.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. The "Settlement Agreement and Release of All Claims" dated October 30, 1995 between the plaintiff, individually as the widow of the decedant and as Executrix, and decedent's mother, Helen Connor, to setting the issue of the latter's dependancy, and providing that Helen Connor shall receive 25% of the net proceeds of this Award, after deduction of attorney's fees, is APPROVED.
2. Defendants shall pay compensation to Linda Beck, widow, at the rate of $196.25 per week and compensation to Helen Connor, mother, at the rate of $65.42 per week for 400 weeks beginning January 28, 1994. That portion of this compensation which has accrued shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by decedent as a result of this injury by accident when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
4. An attorney's fee in the amount of 25% of the total compensation awarded to Ms. Beck is approved for Mrs. Beck's attorney. Counsel shall receive a lump sum from the accrued compensation and thereafter receive every fourth check.
5. Defendant shall pay to Linda Beck, widow, burial expenses up to but not to exceed $2,000.00.
6. An attorney's fee in the amount of 25% of the total compensation awarded to Mrs. Connor is approved for counsel for Mrs. Connor. He shall receive a lump sum from the accrued compensation and thereafter receive every fourth check.
7. Defendants shall pay the costs.
* * * * * * * * * * *
ORDER
Plaintiff's Motion for an award of attorney's fees pursuant to N.C.G.S. § 97-88 is DENIED.
FOR THE FULL COMMISSION
 S/ __________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________________ J. RANDOLPH WARD COMMISSIONER
CMV/cnp/mj 6/6/96